UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **GREATER ST. LOUIS CONSTRUCTION LABORERS WELFARE FUND, ET. AL.,** | )<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| vs. | ) Case No. 4:10CV2197SNLJ<br>) |
| **PARK-MARK, INC.,** | )<br>) |
| **Defendant.** | ) |

### MEMORANDUM

This matter is before the Court on the plaintiffs' motion for summary judgment [14], filed May 11, 2011.  Responsive pleadings have now all been filed and the matter is ripe for disposition.

Plaintiffs filed this ERISA action seeking to recover delinquent contributions, liquidated damages, interest; as well as attorneys' fees and costs, allegedly owed by the defendant to the plaintiff employee benefit funds pursuant to 29 U.S.C.§§185 and 1132.  Plaintiffs contend that the plaintiff benefit funds are entitled to a default judgment against defendant for the period of October 2008 through April 2011 in the total amount of $81,034.44, consisting of $29,648.40 in fringe benefit contributions, $46,688.77 in liquidated damages, $2222.77 in interest, $2072.00 in attorneys' fees, and $402.50 in court costs.  However, in their reply the plaintiffs now have adjusted their monetary request(s) and seek recovery only of the $29,648.40 in fringe benefit contributions, as well as the $537.51 in interest on those contributions.[1]  Plaintiffs' Reply [23],

---

[1]Although not mentioned, the Court will presume that the plaintiffs still seek recovery of their attorneys' fees and court costs.

pgs. 4-5.  Thus, the total amount the plaintiffs now seek during the relevant time-period is $32,660.41 consisting of $29,648.40 in fringe benefit contributions, $537.51 in interest, $2072.00 in attorneys' fees, and $402.50 in court costs.

Defendant contends that the plaintiffs are not entitled to the recovery of any monies for the allegedly delinquent contributions because of a "settlement" of the same litigation brought by the plaintiffs in 2009; and furthermore, in settling the 2009 lawsuit plaintiffs had acknowledged "overpayments" that had been made by the defendant and thus, the defendant is entitled to an "offset" of any monies allegedly owed by these "overpayments."[2]

After a careful review of the plaintiffs' complaint, the instant motion and memorandum in support, all responsive pleadings, the parties' respective statements of fact, all submitted exhibits and affidavits, and the relevant caselaw, the Court will grant the instant motion, as amended.

On or about June 10, 2009 the plaintiffs filed an ERISA  lawsuit seeking to recover delinquent reports, delinquent contributions, liquidated damages, and interest pursuant to 29 U.S.C. §§185 and 1132 for the period of April 2004 through June 10, 2009.  Plaintiffs further sought to compel a financial accounting; as well as attorneys' fees and costs associated with the 2009 litigation.  *See*, Complaint filed in Case No. 4:09CV909DJS; Exhibit 1 to Defendants' Additional Statement of Facts [19].  In early 2010, plaintiffs' counsel was informed by the plaintiff employee benefits funds' accountant [hereinafter referred to as simply the "Funds"] that preliminary field work for the Park Mark financial examination indicated overpayments by the defendant during the relevant time-period; however, a full report would take several months to complete. Document 23, Exhibit 1 - Affidavit of Janine M. Martin.  In February 2010, the

---

[2]Although the defendant does not make a clear request for a "refund" of any balance due it by virtue of the requested "setoff"; it certainly implies such a request in it responsive pleading.

2

parties' counsel began exchanging emails regarding the probable overpayments by the defendant and the usual process for the Funds returning the overpayments.  Defendant's Exhibits 3, 4 and 5 to Statement of Additional Facts [19].  Plaintiffs' counsel explained that the process was complicated and involved, among other things, a review of whether the employees for whom the overpayments were allegedly made did receive benefits due to said overpayments.  Defendant's Exhibit 5 to Statement of Additional Facts [19].  Plaintiff's counsel did not guarantee any type of refund for the alleged overpayments, especially since the accountant's report had not yet been received.

On February 16, 2010 the parties jointly filed a "Stipulation for Dismissal" in Case No. 4:09CV909DJS.  *See,* Document 12 in Case No. 4:09CV909DJS; Exhibit 4 to Defendant's Statement of Additional Facts [19].  The dismissal does not state anywhere whether it is a dismissal with or without prejudice.

Meanwhile, starting in October 2010 defendant began with engaging in "self-help" by withholding contributions to the Funds because it felt the Funds were intentionally delaying the refund defendant believed it was entitled to receive.  Defendant's Statement of Additional Facts [19], ¶9; Affidavit of Mark Solomon (attached to Document 19).

The auditor's report regarding Park Mark was issued in November 2010.  On or about November 23, 2010 plaintiffs filed the present lawsuit seeking to recover monies for the same time-period as the 2009 litigation, except extending it from April 2004 to November 23, 2010. In January 2011, defendant informed the plaintiffs that it intended to continue to "offset" its contributions by the amount it believed it was entitled to as a refund for overpayments made between 2004 and 2009. Exhibit A to Second Affidavit of Janine M. Martin (attached to Document 23).  Plaintiffs responded by informing the defendant that the Funds' Trustees had

determined that the alleged overpayments were not entitled to any refund pursuant to Section 403 of ERISA, 29 U.S.C. §1103(2)(A)(ii) because such overpayments were not made as a result of "a mistake of law or fact." Furthermore, that even if such overpayments were made as the result of "a mistake of law or fact," a refund was not automatic but instead discretionary and dependent on whether such overpayments funded any employees' medical or pension coverage during the relevant time-period.  Exhibit B to Second Affidavit of Janine M. Martin (attached to Document 23).  Finally, plaintiffs informed defendant that until such a review had been made by the Trustees, defendant was obligated to make its full contributions.

On or about February 23, 2011 faxes were exchanged between counsel for the parties regarding the plaintiffs' position on any refund of the alleged overpayments and the prospect of settlement.  Exhibit 6 to Defendant's Statement of Additional Facts [19].  On or about May 11, 2011 plaintiffs filed the instant summary judgment motion.

Plaintiffs contend that there is no dispute that defendant has failed to make the required contributions during the relevant time-period.  Plaintiffs argue that the present lawsuit is not barred by the prior lawsuit's Stipulation for Dismissal because the subject stipulation was silent as to whether it was with or without prejudice; thus, pursuant to Rule 41 Federal Rules of Civil Procedure the stipulation must be considered to be "without prejudice."  Furthermore, any representations or statements made while discussing possible settlement cannot be considered by the Court pursuant to Rule 408 Federal Rules of Evidence.  Plaintiffs further contend that no "setoff" for any alleged overpayments should be considered because such alleged overpayments were not made as a "mistake of fact or law" as required by Section 403 of ERISA, 29 U.S.C. §1103.  Furthermore, refund of any of the alleged overpayments is discretionary with the plaintiff Funds; i.e., Section 403 does not mandate or require an automatic refund of mistakenly paid

4

contributions.  Finally, the plaintiffs contend that defendant cannot establish a right to a refund because it has failed to present any evidence that the employees for whom the alleged overpayments were made did not receive the benefits for which the employer made the contributions.

Defendant contends that it is entitled to a setoff for overpayments because the overpayments were made due to defendant's mistaken belief that it was required to make contributions for all hours worked under the collective bargaining agreements effective during the relevant time period.  Defendant claims a Trustee told defendant's President (Michael Solomon) that defendant would get a "credit" for those overpayments.  Defendant contends that pursuant to Section 403 of ERISA, it is entitled to a setoff and possibly a refund of the balance.  Finally, defendant contends that the plaintiffs have "waived" their right to seek any recovery of delinquent contributions due to representations made as a precursor to the joint filing of the Stipulation for Dismissal in Case No. 4:09CV909DJS.

ERISA provides that, although the assets of an employee benefit plan do not inure to the interests of the employer making the required contributions, any such contributions made by mistake of fact or law may, under certain circumstances, be returned by the plan administrator.  Section 403 of ERISA, 29 U.S.C. §1103(c)(1).  However,

> "(ii) if such contribution or payment is made by an employer to a multiemployer plan by a mistake of fact or law . . . paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake."

Section 403 of ERISA, 29 U.S.C. §1103(c)(2)(A)(ii).[3]  Any return of the alleged overpayments is discretionary with the plan and/or plan administrator; i.e. the requested refund is neither

---

[3]There is no dispute that the subject ERISA plan in this action is a "multiemployer plan."

5

mandatory nor automatic even if made by mistake of fact or law.  *See*, E.M. Trucks, Inc. v. Central States, Southeast and Southwest Areas Pension Plan, 517 F.Supp. 1122, 1124 (D.Minn. 1981).  Furthermore, an employer alleging an overpayment of contributions may not unilaterally offset future contributions by the alleged overpayments of past contributions.  *See*, Carpenters District Council of Kansas City Pension Fund, et. al. v. D.M.Ward Construction Co., 2007 WL 4395654, *3 (W.D.Mo. December 14, 2007)("Unless collective bargaining agreements or plan documents specifically provide for credits against required payments, an employer may not be excused from making those payments.").

     Although there is no affirmative right for an employer to seek a refund for alleged overpayments under ERISA, the Eighth Circuit Court of Appeals has held that employers can have a federal common law right of action for unjust enrichment to recover those contributions.  Young America, Inc. v. Union Central Life Ins. Co., 101 F.3d. 546, 548 (8th Cir. 1996).  However, even though a federal common law of right of action for unjust enrichment may create a cause of action, such cause of action is equitable in nature.  A court may exercise equitable discretion over a lawsuit for restitution of the overpayments when mistakenly made, but equitable principles still apply.  "Restitution is granted when the remedy is equitable under the circumstances." Young America, at 548 *citing* UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of America, 998 F.2d. 509, 513 (7th Cir. 1993)(listing equitable factors to consider); *see also*, American Cleaners and Laundry Co, Inc. v. Textile Processors, Service Trades, Health Care, Professional and Technical Employees International Union Local 161, et. al., 482 F.Supp.2d. 1103, 1115-16 (E.D.Mo 2007)(recognizing a claim for federal common law unjust enrichment pursuant to Young America, *supra.* and applicability of equitable factors in determining whether an award of restitution should be made pursuant to UIU

Severance Pay Trust Fund, *supra.*); St. Paul Warehouse Employees Welfare Fund v. SPS Companies, 2008 WL 239521, *4 (D.Minn. January 29, 2008)(recognizing federal common law restitution and/or unjust enrichment claim for contributions mistakenly paid and applicability of equitable factors in determining whether an award of restitution should be made).

The equitable factors that a court should consider in determining whether to award restitution are:

> "(1) are unauthorized contributions the sort of mistaken payments that equity demands be refunded? (2) has the **[employer]** delayed bringing this action for so long that laches, or some other equitable defense, bars recovery? (3) in the same vein, has the **[employer]**, by continuing the payments for years without apparent question, somehow ratified past payments? and (4) since the Fund has agreed that it is not entitled to keep the disputed amount in any event, can the **[employer]** demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied?"

UIU Severance Pay Trust Fund, at 513.

Applying the equitable principles advocated by the courts in Young America, *supra.* and UIU Severance Pay Trust Fund, *supra.* the Court finds that equity does not require the refund of any alleged overpayments made during the relevant time-period.

Firstly, the record before the Court clearly shows that these payments have been consistently made pursuant to a collective bargaining agreement for over five (5) years, and more importantly, despite several lawsuits between these parties concerning the subject contributions.[4] Yet, defendant has never filed any federal common law restitution and/or unjust enrichment

---

[4]The federal lawsuits in connection with the contributions made (or not made) during the relevant time-period are: Greater St. Louis Construction Laborers Welfare Fund v. Park Mark, Case No. 4:08CV1497ERW; Greater St. Louis Construction Laborers Welfare Fund v. Park Mark, Case No. 4:09CV909DJS; Greater St. Louis Construction Laborers Welfare Fund v. Park Mark, Case No. 4:09CV1031SNLJ; and the current case, Greater St. Louis Construction Laborers Welfare Fund v. Park Mark, Case No. 4:10CV2197SNLJ.

action for the contributions it claims it has mistakenly paid. In fact, even when its own emails show that the November 2010 audit report indicated alleged overpayments, defendant still did not file a federal common law restitution and/or unjust enrichment action. Instead, it unilaterally deducted the alleged overpayment amounts from its mandated contributions, an action not authorized under ERISA or under any CBA in effect at the time.

Secondly, defendant has provided no objective evidence that the alleged overpayments were made as a "mistake of fact or law". Affiant Michael Solomon simply states that "Park Mark has been making these overpayments because we mistakenly believed that we were required to make contributions for all the hours worked under our collective bargaining agreement with the Laborers Union, whether or not the work was performed in the jurisdiction of the collective bargaining agreement." <u>Affidavit of Michael Solomon</u>, ¶5, attached to Document [19]. Defendant fails to provide any copies of said CBAs which it claims gave rise to the mistake of fact regarding the alleged overpayments. It has failed to provide any objective evidentiary record that the overpayments were made due to a mistake of fact.

Furthermore, even if the Court assumes that the alleged overpayments were made due to a mistake of fact, equity still does not favor a refund. In the instant case, defendant has failed to offer any evidence that the employees for whom the alleged overpayments were made did not receive the benefit(s) for which the defendant/employer paid. Instead, the record shows that the employees for whom the alleged overpayments were made were individually credited with those payments, receiving health insurance coverage from the Welfare Fund, and receiving pension benefits from the Pension Fund. Second Affidavit of Bernard Difani, ¶¶3-5 attached to Document [23].

Furthermore, since the Welfare Fund provided health insurance coverage to the affected employees based on the contributions made on their behalf, no "unjust enrichment" has occurred. Second Affidavit of Bernard Difani, ¶4 attached to Document [23].  Also, based upon the alleged overpayments, the Pension Fund gave pension credits to the affected employees.  If the Pension Fund "refunds" the alleged overpayments, the Pension Fund will in turn have to deduct the pension credits from the accounts of the affected employees.  Second Affidavit of Bernard Difani, ¶¶5-6 attached to Document [23].  Both entitlement to a pension and the amount of the pension is dependent on the number of pension credits that an individual accrues over the years of employment.  Second Affidavit of Bernard Difani, ¶7 attached to Document [23].  Defendant has offered no argument to contradict the fact that these affected employees would suffer a real economic hardship due to a "refund" costing them their pension credits.

Thus, the Court finds that there is no material issue of fact in dispute that defendant did not make the required contributions during the relevant time-period, and that defendant has failed to show that the principles of equity demand a "refund" for any alleged overpayments.  Plaintiffs are entitled to summary judgment on the merits of their claims as contained in the complaint, as modified.

Dated this  1st  day of November, 2011.

_____
UNITED STATES DISTRICT JUDGE